01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
07                                 AT SEATTLE

08   ALLYSON MARIE KEMP,                    )
                                            )   CASE NO. C09-1653-RSM
09                  Plaintiff,              )
                                            )
10          v.                              )
                                            )   REPORT AND RECOMMENDATION
11   MICHAEL J. ASTRUE, Commissioner of     )
     Social Security,                       )
12                                          )
                    Defendant.              )
13   _____ )

14          Plaintiff Allyson Marie Kemp appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED for further administrative

20   proceedings.

21                        I.   FACTS AND PROCEDURAL HISTORY

22          Plaintiff was born in 1964 and was 45 years old on the date of the ALJ's decision.

01  (Administrative Record ("AR") 25-26.)   She completed the tenth grade and obtained a General

02  Equivalency Diploma ("GED").   (AR 26, 125.)   Her past work experience includes

03  employment as a bus driver, bus dispatcher, and custodian.  (AR 122.)  Plaintiff was last

04  gainfully employed in November 2006. (AR 26, 118.)

05       Plaintiff asserts that she is disabled due to fibromyalgia, knee problems, back problems,

06  anxiety disorder, depressive disorder, and sleep disorder.   (AR 121.)   She asserts an onset date

07  of November 15, 2006.   (AR 117.)

08       The Commissioner denied plaintiff's claim initially and on reconsideration.   (AR

09  54-57, 61-72.)   Thereafter, plaintiff filed a written request for a hearing.  (AR 73-75.)   On

10  June 22, 2009, the ALJ held a hearing and heard testimony from the plaintiff, the plaintiff's

11  daughter Meghann Kemp-Sonsteng, and vocational expert Olof R. Elofson, Ph.D.   (AR

12  21-49.)  On August 5, 2009, the ALJ issued a decision finding plaintiff not disabled.  (AR

13  10-20.)

14       Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals

15  Council (AR 1-3), making the ALJ's ruling the "final decision" of the Commissioner as that

16  term is defined by 42 U.S.C. § 405(g).  On November 19, 2009, plaintiff timely filed the

17  present action challenging the Commissioner's decision.   (Dkt. 1.)

18                          II.   JURISDICTION

19       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

20  405(g) and 1383(c)(3).

21                       III.   STANDARD OF REVIEW

22       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

01 social security benefits when the ALJ's findings are based on legal error or not supported by

02 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

03 Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

04 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

05 *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

06 Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

07 testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

08 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it

09 may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

10 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to

11 more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

12 *Id*.

13       The Court may direct an award of benefits where "the record has been fully developed

14 and further administrative proceedings would serve no useful purpose." *McCartey v.*

15 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)(citing *Smolen v. Chater*, 80 F.3d 1273, 1292

16 (9th Cir. 1996)). The Court may find that this occurs when:

17     (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
claimant's evidence; (2) there are no outstanding issues that must be resolved

18 before a determination of disability can be made; and (3) it is clear from the record
that the ALJ would be required to find the claimant disabled if he considered the

19 claimant's evidence.

20 *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)(noting that

21 erroneously rejected evidence may be credited when all three elements are met).

22 / / /

REPORT AND RECOMMENDATION
PAGE -3

01                          IV.   DISCUSSION

02          As the claimant, Ms. Kemp bears the burden of proving that she is disabled within the

03   meaning of the Social Security Act (the "Act").   *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

04   Cir. 1999)(internal citations omitted).   The Act defines disability as the "inability to engage in

05   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

06   expected to last, for a continuous period of not less than twelve months.   42 U.S.C. §§

07   423(d)(1)(A), 1382c(a)(3)(A).   A claimant is disabled under the Act only if her impairments

08   are of such severity that she is unable to do her previous work, and cannot, considering her age,

09   education, and work experience, engage in any other substantial gainful activity existing in the

10   national economy.   42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094,

11   1098-99 (9th Cir. 1999).

12          The Commissioner follows a five-step sequential evaluation process for determining

13   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

14   must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff has

15   not engaged in substantial gainful activity since November 15, 2006, the alleged onset date.

16   (AR 12.)   At step two, it must be determined whether the claimant suffers from a severe

17   impairment.   The ALJ found plaintiff has the following severe impairments: obesity, major

18   depressive disorder, generalized anxiety disorder, panic disorder, left shoulder pain, status post

19   surgery, and fibromyalgia.   (AR 12.)   Step three asks whether the claimant's impairments

20   meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.   The ALJ

21   found plaintiff did not have an impairment or combination of impairments that meets or equals

22   one of the listed impairments.   (AR 13.)   If the claimant's impairments do not meet or equal a

01 listing, the Commissioner must assess residual functional capacity ("RFC") and determine at

02 step four whether the claimant has demonstrated an inability to perform past relevant work.

03 The ALJ found plaintiff is unable to perform any past relevant work.   (AR 18.)   If the claimant

04 is able to perform her past relevant work, she is not disabled; if the opposite is true, then the

05 burden shifts to the Commissioner at step five to show that the claimant can perform other work

06 that exists in significant numbers in the national economy, taking into consideration the

07 claimant's RFC, age, education, and work experience.   20 C.F.R. §§ 404.1520(g), 416.920(g);

08 *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999).   The ALJ found there are jobs that

09 exist in significant numbers in the national economy that the plaintiff can perform.   (AR 19.)

10 Accordingly, the ALJ concluded that plaintiff has not been under a disability from November

11 15, 2006, through the date of the decision.   (AR 20.)

12        Plaintiff argues that the Commissioner: (1) improperly evaluated the medical opinions

13 of treating physician John Chisholm, D.O., examining physician Gary Gaffield, D.O.,

14 examining psychiatrist Ian Kodish, M.D., and treating psychiatrist Saul Helfing, M.D.; (2)

15 improperly evaluated the lay opinion of her husband David Sonsteng; (3) improperly evaluated

16 her credibility; (4) improperly evaluated her RFC; and (5) erred in his step five analysis.   (Dkt.

17 No. 12.)   She requests remand for an award of benefits or, alternatively, for further

18 administrative proceedings.   *Id*. at 23.   The Commissioner argues that the Appeals Council's

19 decision is supported by substantial evidence and should be affirmed.   (Dkt. No. 17.)   For the

20 reasons described below, the Court agrees with the plaintiff.

21        A.     Medical Opinion Evidence

22        As a matter of law, more weight is given to a treating physician's opinion than to that of

01  a non-treating physician because a treating physician "is employed to cure and has a greater

02  opportunity to know and observe the patient as an individual."  *Magallanes*, 881 F.2d at 751;

03  20 C.F.R. § 404.1527(d)(1)-(2).   "Likewise, greater weight is accorded to the opinion of an

04  examining physician than a non examining physician."  *Andrews*, 53 F.3d at 1041.   However,

05  under certain circumstances, a treating or examining physician's opinion can be rejected,

06  whether or not that opinion is contradicted by other medical evidence of record.  *Magallanes*,

07  881 F.2d at 751.   The Commissioner must give clear and convincing reasons for rejecting a

08  treating or examining physician's opinion if that opinion is not contradicted by other evidence,

09  and specific and legitimate reasons if it is.  *Reddick*, 157 F.3d at 725.   "This can be done by

10  setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

11  stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at

12  751).   The Commissioner must do more than merely state his conclusions.   "He must set forth

13  his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing

14  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).   Such conclusions must at all times

15  be supported by substantial evidence.  *Id.*

16               1.  *John Chisholm, D.O., and Gary Gaffield, D.O.*

17         John Chisholm, D.O., has been plaintiff's primary care physician since September 17,

18  2007.  (AR 263-329.)   On July 8, 2008, he completed a Physical Residual Functional

19  Capacity Questionnaire in which he opined that the plaintiff suffers from chronic anxiety,

20  depression, and fibromyalgia.  (AR 312.)   Dr. Chisholm indicated that the plaintiff has

21  tenderpoints consistent with fibromyalgia, and symptoms of depression and anxiety, including

22  anxiety attacks, sleep problems, and decreased interest.  *Id.*   He opined that plaintiff was

01 "incapable of even 'low stress' jobs" due to her "need for frequent movement," and her severe

02 anxiety and depression, which he opined lead to poor attention, memory, and interpersonal

03 skills.  (AR 313.)   In addition, Dr. Chisholm indicated that the plaintiff could walk only one

04 city block, sit no more than 10 minutes, and stand no more than 15 minutes, but could sit up to

05 4-hours a day and stand or walk up to 4-hours a day in an 8-hour work day.  (AR 314.)   He

06 restricted the plaintiff to lifting less than 10 pounds occasionally, 10 pounds occasionally, 20

07 pounds rarely, and 50 pounds never.  *Id*.

08        The ALJ gave Dr. Chisholm's opinion "little weight," because "Dr. Chisholm did not

09 state why he gave the claimant such severe restrictions, and there was no evidence that his

10 opinions were based on objective medical testing or clinical examinations."  (AR 17.)   The

11 ALJ also noted that Dr. Chisholm indicated that the plaintiff "had tenderpoints consistent with

12 fibromyalgia, but he did not discuss where the tenderpoints were, or how many the claimant

13 had." *Id*.

14        In reaching this decision, the ALJ assigned greater weight to the opinion of examining

15 physician Gary Gaffield, D.O., who conducted a physical examination of the plaintiff on May

16 21, 2007.  (AR 204-209.)   Dr. Gaffield opined that "[t]here were no significant objective

17 findings that would prevent this claimant from walking or standing for eight hours during an

18 eight-hour day, nor were there significant objective findings with this assessment that would

19 prevent this claimant from sitting eight hours during an eight-hour day."  (AR 208.)   In

20 addition, Dr. Gaffield opined that plaintiff "would be advised not to carry more than 10 pounds

21 frequently and 20 pounds occasionally, limited by her obese statute and the weakness in her left

22 shoulder, with limited motion."   (AR 209.)

01      The plaintiff argues that the ALJ failed to provide legally sufficient reasons for

02  assigning little weight to Dr. Chisholm's opinion.  (Dkt. 12 at 14-15.)   The Court agrees with

03  the plaintiff that the ALJ's rejection of Dr. Chisholm's opinion in favor of Dr. Gaffield's

04  opinion constitutes reversible error.   The record contains many reports from Dr. Chisholm,

05  indicating plaintiff suffers from anxiety, depression, and fibromyalgia.  (AR 264-87.)   His

06  diagnoses are supported by the record, and indeed, even the ALJ found these to be severe

07  impairments.   However, the ALJ simply chose to ignore the multiple reports and reject in

08  conclusory fashion Dr. Chisholm's summary opinion on the RFC questionnaire.   The opinions

09  of a treating physician require more consideration than was given by the ALJ.  *See Orn v.*

10  *Astrue,* 495 F.3d 625, 631-33 (9th Cir. 2007)(treating physician's opinion must be given

11  controlling weight if it is well-supported and not inconsistent with other substantial evidence in

12  the record; even if the opinion is not entitled to "controlling weight," it is "still entitled to

13  deference").

14      Fibromyalgia is a disease that is notable for its lack of objective diagnostic techniques.

15  *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)("[Fibromyalgia's] cause or causes are

16  unknown, there is no cure, and, of greatest importance to disability law, its symptoms are

17  entirely subjective.   There are no laboratory tests for the presence or severity of

18  fibromyalgia.").   Put differently, "the absence of swelling joints or other orthopedic and

19  neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the

20  absence of a headache is an indication that a patient's prostate cancer is not advanced."

21  *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003)(internal quotation omitted).

22  "The principle symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only

01 symptom that discriminates between it and other diseases of a rheumatic character – multiple

02 tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that patient

03 must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly

04 cause the patient to flinch." *Sarchet*, 78 F.3d at 306.

05         Here, Dr. Chisholm's medical records show that plaintiff has exhibited 18/18 tender

06 points of fibromyalgia (AR 288-89, 312), pain (264, 265, 266, 267, 268, 269, 271, 273, 274,

07 276, 277, 278, 279, 287), disturbed sleep (AR 267, 271, 281, 282, 284, 285, 286, 287), and

08 stiffness (AR 268, 271).   Dr. Chisholm's treatment notes also reflect that plaintiff has been

09 diagnosed and treated for anxiety (AR 264, 265, 266, 267, 271, 272, 273, 274, 276, 277, 280,

10 281, 282, 285, 286) and depression (AR 267, 274, 277, 281, 282, 286, 287).   Thus, the ALJ's

11 statement that "there was no evidence that his opinions were based on objective medical testing

12 or clinical examinations" is erroneous.   Moreover, courts have found it error for an ALJ to

13 discount a treating physician's opinion due to a lack of objective evidence for fibromyalgia.

14 *See Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001)(quoting *Sarchet*, 78 F.3d at 306).

15 Here, the ALJ erred by "'effectively require[ing] 'objective' evidence for a disease that eludes

16 such measurement.'"   *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)(quoting

17 *Green-Younger*, 335 F.3d at 108).

18         In sum, the ALJ's reasons for rejecting Dr. Chisholm's opinions were neither specific

19 nor legitimate.   Nor were such reasons supported by substantial evidence.   Moreover, the ALJ

20 gave no reason to support his conclusion that the opinions of Dr. Gaffield were reliable,

21 whereas the opinions of Dr. Chisholm were not.   Additional arguments offered in defendant's

22 brief were not made by the ALJ, and thus will not be addressed by this Court.   *See Bray v.*

01 *Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009)(the Court reviews the ALJ's decision

02 "based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations

03 that attempt to intuit what the adjudicator may have been thinking.")(citing *SEC v. Chenery*

04 *Corp*., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 2d 1995 (1947)("[I]n dealing with a

05 determination or judgment which an administrative agency alone is authorized to make,

06 [courts] must judge the propriety of such action solely by the grounds invoked by the agency.

07 If those grounds are inadequate or improper, the court is powerless to affirm the administrative

08 action by substituting what it considers to be a more adequate or proper basis."); *Snell v. Apfel*,

09 177 F.3d 128, 134 (2d Cir. 1999)("The requirement of reason-giving exists, in part, to let

10 claimants understand the disposition of their cases…")).

11       On remand, the ALJ should re-review all of the medical evidence, including the

12 opinions of Dr. Chisholm, and assess the level of impairments faced by the plaintiff.   To the

13 extent the ALJ relies on the opinion of examining physician Dr. Gaffield to reject the opinion of

14 Dr. Chisholm on remand, the ALJ must explain where and how these physician's conclusions

15 differ.   As stated above, "[t]his can be done by setting out a detailed and thorough summary of

16 the facts and conflicting evidence, stating his interpretation thereof, and making findings;" in

17 doing so, "the ALJ must explain why [his findings], rather than the doctors', are correct."

18 *Reddick*, 157 F.3d at 725 (citing *Embrey*, 849 F.2d at 421-22).   If the ALJ believes he needs to

19 know more about Dr. Chisholm's opinion in order to properly evaluate it, the ALJ should

20 conduct an appropriate inquiry, for example, by subpoenaing Dr. Chisholm or submitting

21 questions to him.   *See Smolen*, 80 F.3d at 1288 (holding it is incumbent upon an ALJ to obtain

22 additional information from a doctor or medical facility if the ALJ determines that he needs to

01  know more information to properly evaluate it).

02              2.  *Ian Kodish, M.D.*

03        On May 26, 2007, plaintiff was examined by Division of Disability Determination

04  Services ("DDS") psychiatrist Ian Kodish, M.D.   (AR 210-15.)   Dr. Kodish diagnosed

05  plaintiff with generalized anxiety disorder, panic disorder with agoraphobia, major depressive

06  disorder (recurrent, moderate without psychotic features), and chronic pain.  (AR 214.)  He

07  assigned her a Global Assessment of Functioning ("GAF") score of 40, which indicates some

08  impairment in reality testing, or impairment in speech and communication, or serious

09  impairment in several of the following: occupational or school functioning, interpersonal

10  relationships, judgment, thinking, or mood.  *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC

11  AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. Text Rev. 2000).   Explaining his

12  Functional Assessment, Dr. Kodish stated as follows:

13              The claimant does appear to have difficulty concentrating and maintaining focus as
                represented by her poor calculation ability during the intellectual function portion
14              of the examination.  She also exhibited some impairment in fund of knowledge,
                which would be consistent with a lack of high school diploma.   Nevertheless, she
15              did have good digit span manipulation and concentration as well as adequate
                judgment and abstract thinking.
16
                She would, therefore, be expected to have the ability to perform simple and
17              repetitive tasks.  However, more detailed and complex tasks would likely be a
                challenge to her significant anxiety symptoms, which appear to be impairing her
18              ability to focus sustained attention.

19              She would also be expected to have some difficulty accepting instructions from
                supervisors based on her past experience with one very mean supervisor causing
20              recurrent anxiety symptoms.   Her anxiety and avoidance would also likely impact
                her ability to interact well with coworkers and the public.
21
                Currently with her difficulty leaving the home secondary to her fear of panic, she
22              would have significant difficulty [sic] does performing simple work activities on a
                consistent basis or maintain regular attendance in the workplace.   She would be

REPORT AND RECOMMENDATION

01       further expected to have difficulty handling the usual stress encountered in
         competitive work.

02
         It would be expected that with continued treatment, including possible
03       augmentation of medications and specifically exposure therapy and other forms of
         psychotherapy that she would be likely to improve significantly in her symptoms.

04

05   (AR 215.)

06           The ALJ gave significant weight to portions of Dr. Kodish's opinion, but rejected

07   portions of the same report which tend to support the plaintiff's claim.  (AR 17-18.)  For

08   example, the ALJ assigned "significant weight" to Dr. Kodish's opinion that plaintiff "would be

09   expected to have the ability to perform simple, repetitive tasks," as well as his opinion that

10   plaintiff would "have some difficulty accepting instructions from supervisors and her anxiety

11   and avoidance would also likely impact her ability to interact well with coworkers and the

12   public."  (AR 18.)  In addition, the ALJ noted that with continued treatment, Dr. Kodish

13   believed the claimant would likely significantly improve in her symptoms.  *Id*.  The ALJ

14   assigned "[t]his portion of Dr. Kodish's opinion . . . significant weight, because it is based on an

15   in person psychiatric examination with objective testing, and it is consistent with the claimant's

16   own reported activities, and with other objective evidence that shows the claimant had some

17   social and concentration problems that have improved somewhat with treatment."  (AR 18.)

18   However, the ALJ rejected Dr. Kodish's opinion that gives the plaintiff a GAF score of 40,

19   finding "no indication in the record that the claimant has this level of mental impairment."  The

20   ALJ noted that Dr. Kodish's examination showed no deficits in reality testing or

21   communication, and her mental functioning limits were at worst moderate.  (AR 18.)  The

22   ALJ further noted that plaintiff's activities show that she is able to fix simple meals, drive, shop,

REPORT AND RECOMMENDATION
PAGE -12

01   and get along well with family, friends, and neighbors.   *Id.*

02   The ALJ's method of picking and choosing evidence is improper.   Rather, a
03   physician's "statements must be read in context of the overall diagnostic picture he draws."
04   *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 720
05   (stating that the ALJ must review the record as a whole); *Gallant v. Heckler*, 753 F.2d 1450,
06   1455-56 (9th Cir. 1984)(holding an ALJ cannot reach a conclusion first and then attempt to
07   justify it by ignoring competent evidence in the record that suggest the opposite conclusion).
08   Moreover, the ALJ's conclusion that plaintiff's "mental functioning is at worst moderate,"
09   because she can fix simple meals, drive, shop, and get along with friends and family, does not
10   amount to specific and legitimate reasons for rejecting Dr. Kodish's opinion.   (AR 18.)   In
11   essence, the ALJ made a medical judgment that plaintiff's mental impairments did not
12   significantly interfere with her ability to function on a regular basis.   To the extent the ALJ
13   relied on these factors to reject Dr. Kodish's opinion, the evidence is insubstantial and
14   improperly based on the ALJ's own lay opinions.

15   In addition, the ALJ's analysis implicitly rejects portions of Dr. Kodish's opinion he
16   purportedly adopted but failed to include in his RFC analysis, including plaintiff's limitations in
17   dealing with supervisors, co-workers and the general public,.   (AR 15.)   The ALJ also
18   improperly ignored Dr. Kodish's opinion that plaintiff would have difficulty "performing
19   simple work activities on a consistent basis," "maintaining regular attendance in the
20   workplace," and "handling the usual stress encountered in competitive work."   (AR 215.)
21   Because the ALJ did not employ the limitations identified by Dr. Kodish's opinion in his RFC
22   analysis, nor provide clear and convincing or specific and legitimate reasons for rejecting them,

01 the ALJ committed legal error.  On remand, the ALJ should therefore properly weigh Dr.

02 Kodish's opinion, or provide adequate reasons for rejecting it.

03                 3.  *Saul Helfing, M.D.*

04        Saul Helfing, M.D., has been plaintiff's treating psychiatrist since August 2007.  (AR

05 175.)  On May 15, 2009, Dr. Helfing completed a Psychiatric Review Technique form at the

06 request of petitioner's counsel.  (AR 175, 330-44.)  He opined that plaintiff had moderate

07 restriction of activities of daily living; moderate difficulties in maintaining social functioning;

08 marked difficulties in maintaining concentration, persistence, and pace; and three episodes of

09 decompensation, each of extended duration.  (AR 341.)  Under the "C" criteria, Dr. Helfing

10 checked the box indicating "that a minimal increase in mental demands or change in the

11 environment would be predicted to cause the individual to decompensate."  (AR 342.)  In

12 addition, he noted that plaintiff has "nearly" complete inability to function independently

13 outside of her home.  *Id.*  Aside from marking the check boxes on the form, Dr. Helfing did

14 not provide any narrative explanations for his conclusions, nor did he point to any specific

15 findings to support his opinions.  Dr. Helfing's medical records are not contained in the

16 administrative record.

17        Unlike the opinions of Dr. Chisholm and Dr. Kodish, the ALJ gave specific and

18 legitimate reasons for giving "very little weight" to Dr. Helfing's opinions.  The ALJ pointed

19 out that Dr. Helfing "did not state why he found the claimant to have marked difficulties in

20 concentration, persistence and pace, nor did he provide any objective testing to justify his

21 opinion."  (AR 17.)  Indeed, aside from marking the check boxes on the form, Dr. Helfing

22 provided no explanation for his opinions at all.  An ALJ may reject medical opinions based

REPORT AND RECOMMENDATION
PAGE -14

01  upon check-the-box type reports that lack a narrative explanation for their conclusions.  *Crane*

02  *v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995)(internal citations omitted).  The Court's main

03  concern in connection with this inquiry centers around the search for specific justifications and

04  rationale for a conclusion, as opposed to conclusory statements, or a mere reiteration of a

05  claimant's subjective complaints.  *Id.*  Courts are not obligated to accept any physician's

06  opinion that is brief and conclusory in form and that offers few clinical findings to support its

07  conclusions.  *Magallenes*, 881 F.2d at 751.  In addition, the ALJ found "no evidence in the

08  medical record to support his assertion that the claimant has had any episodes of

09  decompensation, let alone three."  (AR 17.)  These are sufficiently specific and legitimate

10  reasons for rejecting Dr. Helfing's opinions.

11       The plaintiff contends that the ALJ should have questioned Dr. Helfing about the bases

12  of his opinions.  (Dkt. 12 at 18.)  Under the regulations, "[t]he ALJ is required to recontact

13  medical sources . . . only if the available evidence does not provide an adequate basis for

14  determining the merits of the disability claim."  *Sultan v. Barnhart,* 368 F.3d 857, 863 (8th Cir.

15  2004); *see also Thomas,* 278 F.3d at 958.   The ALJ is not required to seek additional clarifying

16  statements from a treating physician unless a crucial issue is undeveloped.  Rather, as the

17  Commissioner argues, it is the plaintiff's burden to prove she is disabled.  *See Mayes v.*

18  *Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); 20 C.F.R. § 404.1512(c)("You must provide

19  medical evidence showing that you have impairment(s) and how severe it is during the time you

20  say you are disabled.")

21       Here, the ALJ found Dr. Helfing's report conclusory and unsupported by the record.

22  Indeed, as the ALJ noted, "[t]here is no evidence in the medical record to support his assertion

REPORT AND RECOMMENDATION
PAGE -15

01  that the claimant has had any episodes of decompensation, let alone three."  (AR 17.)   Based

02  on the record, the ALJ had no duty to develop the record further.  *See Mayes*, 276 F.3d at

03  459-60.

04          B.      Lay Witness Testimony

05          In order to determine whether a claimant has an impairment, an ALJ must also consider

06  lay witness sources, such as testimony from family members.   20 C.F.R. § 404.1513(d)(4).

07  Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to

08  work is competent evidence, 20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232

09  (9th Cir. 1987); and therefore cannot be disregarded without comment.  *Dodrill v. Shalala*, 12

10  F.3d 915, 919 (9th Cir. 1993).   If an ALJ wishes to discount the testimony of a lay witness, he

11  must provide reasons germane to each witness.   *Id*.

12          Here, the plaintiff's husband David M. Sonsteng provided a third party function report

13  regarding the nature and extent of plaintiff's impairments.   (AR 136-43.)   The ALJ

14  summarized Mr. Sonsteng's report as follows:

15          [Mr. Sonsteng] stated the claimant has no problems with her own personal care, and
            that she was able to take care of a dog and make sure her children caught the school
16          bus.   She is able to prepare simple meals, but she can't stand as long as she used to.
            He also noted that the claimant is still able to drive, and that she can go shopping,
17          but she is unable to pay bills or count change.   Mr. Sonsteng also noted that the
            claimant is able to walk for half a mile, and she can follow written instructions, but
18          sometimes needs verbal instructions repeated to her.   These limitations are
            addressed in the residual functional capacity . . .
19

20  (AR 18.)   The ALJ gave this report "some weight to the extent it is consistent with . . . the

21  residual functional capacity" assessment.   (AR 18.)

22          Plaintiff argues that contrary to the ALJ's assertion, he failed to incorporate into the

REPORT AND RECOMMENDATION
PAGE -16

01 | RFC Mr. Sonsteng's statements that plaintiff can walk no more than ½ mile, requires repeating

02 | verbal instructions, and is unable to count change.   (Dkt. 12 at 19.)   Plaintiff contends that the

03 | ALJ failed to provide germane reasons for rejecting these and other limitations identified by her

04 | husband.   *Id.*   The Commissioner responds that two of the three limitations mentioned by the

05 | plaintiff were addressed by the ALJ.   (Dkt. 17 at 18-19.)   In addition, the Commissioner

06 | argues that the ALJ considered the testimony, but properly found it credible only the extent it

07 | was consistent with the medical evidence.   *Id.*

08 | As indicated above, the ALJ gave Mr. Sonsteng's statements "some weight," but only to

09 | the extent they were consistent with his RFC assessment.   (AR 18.)   The ALJ's decision

10 | provides no basis to determine what was accepted and what was rejected.   The ALJ's

11 | conclusory statements in his decision, thus, provide no effective basis for judicial review.

12 | Identifying inconsistencies between such statements and the record when looked at as a whole

13 | is sufficient.   *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).   Here, however, the ALJ

14 | did not identify any inconsistencies between Mr. Sonsteng's statements and the record.   On

15 | remand, the ALJ will review the lay witness testimony of Mr. Sonsteng in light of the

16 | applicable record and specifically identify those parts of the testimony he accepts and those

17 | parts that he rejects.

18 | C.      Credibility

19 | Because this case is being remanded for the reasons detailed above, the Court eschews a

20 | detailed analysis of the ALJ's credibility determination.   In light of the fact that the Court has

21 | found that the ALJ failed to properly evaluate the opinions of Dr. Chisholm, Dr. Gaffield, and

22 | Dr. Kodish, and the testimony of Mr. Sonsteng, and because credibility determinations are

01 inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's

02 credibility finding is also reversed and the issue remanded.   After re-evaluating the medical

03 evidence of record, the ALJ will be in a better position to evaluate the plaintiff's credibility.

04 To this end, the ALJ is reminded that he must do more than make general findings; rather, when

05 evaluating a claimant's credibility, the ALJ "must specifically identify what testimony is

06 credible and what testimony undermines the claimant's complaints."   *Greger v. Barnhart*, 464

07 F.3d 968, 972 (9th Cir. 2006)(internal quotations omitted).   On remand, the ALJ should

08 properly assess plaintiff's testimony, and provide clear and convincing reasons for rejecting it

09 should such a conclusion be warranted.   In this process, the ALJ is reminded to carefully

10 determine which of plaintiff's substantial daily activities, if any, are transferrable to a work

11 setting.   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Smolen*, 80 F.3d at 1284

12 ("The Social Security Act does not require that claimant's be utterly incapacitated to be eligible

13 for benefits, and many home activities may not be easily transferrable to a work

14 environment.").

15          D.    RFC

16          Because this case is being remanded for the reasons detailed above, the Court likewise

17 eschews a detailed analysis of plaintiff's RFC argument that the ALJ erred when he found that

18 plaintiff could perform modified light work.   That said, it is clear to this Court that the ALJ

19 erred to the extent he based this determination on the opinions of Dr. Gaffield and Dr. Kodish.

20          E.   Step Five Analysis

21          In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the

22 claimant's limitations.   *Embrey*, 849 F.2d at 422-24.   In order for the vocational expert's

REPORT AND RECOMMENDATION
PAGE -18

01  testimony to constitute substantial evidence, the hypothetical posed must "consider all of the

02  claimant's limitations." *Andrews*, 53 F.3d at 1044.   The ALJ is not required to include

03  limitations for which there is no evidence.   *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th

04  Cir. 2001).

05          Because the hypothetical question posed to the vocational expert was based upon the

06  faulty determination of plaintiff's RFC, the vocational expert's answer cannot serve as

07  substantial evidence that plaintiff can perform other jobs that exist in substantial numbers in the

08  national economy.   As a result, the questions posed to the vocational expert and his responses

09  are legally deficient and of no evidentiary value.   *Robbins v. SSA*, 466 F.3d 880, 886 (9th Cir.

10  2006).   On remand, the ALJ should properly evaluate the evidence in accordance with

11  appropriate legal standards and incorporate them into a hypothetical to the vocational experts.

12          F.   Remand is Required

13          The decision whether to remand for further proceedings or order an immediate award of

14  benefits is within the Court's discretion.   *See Harmen*, 211 F.3d at 1175-78.   Where no useful

15  purpose would be served by further administrative proceedings, or where the records has been

16  fully developed, it is appropriate to exercise this discretion to direct an immediate award of

17  benefits.   *Id*. at 1179 (noting "that the decision of whether to remand   for further proceedings

18  turns upon the likely utility of such proceedings").   However, where there are outstanding

19  issues that must be resolved before a determination of disability can be made, and it is not clear

20  from the record that the ALJ would be required to find the claimant disabled if all the evidence

21  were properly evaluated, remand is appropriate.   *Id*.   Here, remand for further proceedings is

22  appropriate to allow the ALJ to remedy the above mentioned errors.   *Id*. at 1178.

01                                V.   CONCLUSION

02          For the foregoing reasons, the Court recommends that the Commissioner's decision be

03   REVERSED  and  REMANDED  for  further  proceedings  not  inconsistent  with  the  Court's

04   instructions.   A proposed order accompanies this Report and Recommendation.

05          DATED this 19th day of July, 2010.

06

07                                        _____
                                          Mary Alice Theiler
08                                        United States Magistrate Judge

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -20